Edward R. Hugo   [Bar No. 124839]
James C. Parker [Bar No. 106149]
Tina M. Glezakos [Bar No. 229928]
Charles S. Park [Bar No. 161430]
HUGO PARKER, LLP
One Front Street, 26th Floor
San Francisco, CA 94111
Telephone:  (415) 808-0300
Facsimile:   (415) 808-0333
Email: service@HUGOPARKER.com

Attorneys for Plaintiffs
HUGO PARKER, LLP; and
EDWARD R. HUGO, ESQ.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| HUGO PARKER, LLP; and EDWARD R. HUGO, ESQ.;<br><br>          Plaintiffs,<br><br>     vs.<br><br>TATE ANDALE, INC.; WILLIAM TATE; HARTFORD ACCIDENT AND INDEMNITY COMPANY; and DOES 1-10 inclusive,<br><br>          Defendants. | Case No.<br><br>COMPLAINT FOR DAMAGES:<br><br>1.   Intentional Misrepresentation;<br>2.   Negligent Misrepresentation;<br>3.   Fraud by Concealment;<br>4.   Tortious Interference With Contract;<br>5.   Implied Indemnity;<br>6.   Equitable Indemnity;<br>7.   Breach of Contract;<br>8.   Account Stated;<br>9.   For Services Rendered; and<br>10.  Quantum Meruit<br><br>JURY TRIAL DEMANDED |

Plaintiffs HUGO PARKER, LLP and EDWARD R. HUGO, ESQ. (collectively, "Hugo Parker") for their Complaint against defendants TATE ANDALE, INC. ("Tate Andale"), WILLIAM TATE ("William Tate"), HARTFORD ACCIDENT AND INDEMNITY COMPANY ("Hartford") and Does 1-10, inclusive (collectively, "Defendants"), allege as follows:

## **NATURE OF ACTION**

1.     This is an action brought by defense attorneys against former clients and their insurance company arising out of the clients' wrongful and intentional withholding, hiding and failure to disclose relevant, non-privileged documents, and the subsequent attempt to force their attorneys to personally pay all the fees and costs incurred in the subsequent hunt for and production of the documents, despite their express and repeated promise to pay all such fees and costs.

2.     Hugo Parker is a law firm based in San Francisco, California. From October 2014 until January 2017, Hugo Parker was retained by Tate Andale and Hartford, an insurance carrier, to assume the defense of Tate Andale in asbestos litigation across the United States, including in the State of Hawai`i.

3.     Hugo Parker investigated Tate Andale's manufacturing records, which dated from the mid-twentieth century to the present. The investigation led Hugo Parker to believe that through Tate Andale's long history as a company and its involvement as a defendant in numerous prior asbestos cases, all of Tate Andale's non-privileged relevant records had been located, made available for inspection and/or produced.

4.     One of the cases Hugo Parker defended for Tate Andale was *William and Michelle Schane v. General Electric Company, Inc., et al.*, Civil No. 15-1-0034-01, filed in the Circuit Court of the First Circuit, State of Hawai`i ("*Schane*").  In April 2016, during the discovery phase of *Schane*, Hugo Parker learned that Tate Andale had not produced or made available for inspection certain legacy drawings and other documents. Tate Andale knew, or should have known, that its failure to disclose the existence of such materials would not only impede Hugo Parker's ability to defend Tate Andale, but would also expose Hugo Parker to court-ordered sanctions and

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

cause other harm to Hugo Parker itself.  Hugo Parker immediately disclosed the withheld materials and fully cooperated in the subsequent efforts to locate, identify and produce all relevant and non-privileged drawings, documents and materials maintained by Tate Andale.

5.     As a result of the withholding of drawings and documents and the failure to timely produce such materials, the Schanes asked the trial court to sanction both Hugo Parker and Tate Andale.  In or about May 2016, on the eve of the jury trial in *Schane*, the trial court determined that Tate Andale "and/or" Hugo Parker had engaged in discovery misconduct, and ordered severe sanctions against Tate Andale, crippling the ability of Hugo Parker to defend the client.

6.     A jury was selected and trial commenced.  When the trial reached its closing stages, Tate Andale and Hartford decided to settle with the Schanes. Hartford and/or Tate Andale agreed to fully reimburse the Schanes and their counsel for all costs and fees arising out of the production of Tate Andale's records and related discovery expenses, and make their records available for inspection and production after trial.

7.     Thereafter, with Hugo Parker in attendance, the Schanes' counsel returned to Tate Andale's facilities and conducted an elaborate and expensive search for all of Tate Andale's documents, drawings and other materials not just limited to discovery relevant in the *Schane* matter.

8.     In addition to their post-trial quest for all of Tate Andale's hidden documents – the cost of which was to be paid for by Tate Andale and/or Hartford, the Schanes' counsel also continued their crusade for monetary and non-monetary sanctions against Hugo Parker arising from the discovery misconduct of Tate Andale. The Court subsequently found that William Tate falsely testified in prior asbestos litigation regarding Tate Andale's use of asbestos-containing component parts and that Tate Andale

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

engaged in egregious discovery misconduct by failing to produce relevant documents, drawings and other materials during the litigation; but also that Hugo Parker should have discovered that egregious misconduct sooner than it did.  The Court determined that none of the sanctions sought in the Order to Show Cause proceedings against Hugo Parker should be awarded, except for one: that Hugo Parker should reimburse the Schanes for all fees and costs arising out of the late discovery and production of Tate Andale's drawings, documents and other materials – the very fees and costs Tate Andale and Hartford previously agreed to pay.

9.      On May 19, 2017, the Court entered a judgment (the "May Judgment") against Hugo Parker for $1,123,210.54, a sum the court determined was the fair value of the fees and costs for the production of Tate Andale's documents.

10.     Despite their prior agreement to reimburse the Schanes for all fees and costs for the production of Tate Andale documents, Tate Andale and Hartford have refused to make any such payment, causing severe and immediate harm to Hugo Parker, including but not limited to interference with the practice of law, deprivation of property and irreparable damage to reputation. In addition, Hartford has further refused to pay Hugo Parker for all the fees and costs stemming from the defense of Tate Andale following the trial in *Schane*. And, although Tate Andale and Hartford initially paid Hugo Parker's fees and costs arising from its defense in the Order to Show Cause Proceedings, Tate Andale and Hartford have failed to remit payment for the total fees and costs incurred by Hugo Parker incurred as a result of Tate Andale's misconduct.

## PARTIES, JURISDICTION AND VENUE

11.     The jurisdiction of this Court is predicated upon diversity jurisdiction because the citizenship of Hugo Parker and Edward Hugo,

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

residents of California, are diverse from Tate Andale and Hartford, residents of Maryland and Connecticut respectively, and the amount in controversy exceeds $75,000. (28 USC §1332.)

12.     Plaintiff HUGO PARKER, LLP is a limited liability law partnership based in San Francisco, California.

13.     Plaintiff EDWARD R. HUGO, ESQ. is a Founding Partner with the law firm of HUGO PARKER, LLP, a California resident and duly licensed to practice law in the State of California and the State of Hawai`i.

14.     Defendant TATE ANDALE, INC. is a corporation that designs and manufactures strainers, filters, valves and heat exchangers and is duly organized and existing under the laws of the State of Maryland with its principal place of business in Baltimore, Maryland.

15.     Defendant WILLIAM TATE is the President and Chief Executive Officer of Tate Andale and a citizen and resident of the State of Maryland.

16.     Defendant HARTFORD ACCIDENT AND INDEMNITY COMPANY is a corporation duly organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut, which at all relevant times provided insurance to Tate Andale for *Schane* and other asbestos-related matters.

17.     Venue is proper in the United States District Court, Northern District of California, San Francisco Division, because a substantial part of the events or omissions giving rise to the claims herein, including but not limited to the intentional conduct of Defendants, caused injury to Plaintiffs in San Francisco, California, subjecting Defendants, and each of them, to personal jurisdiction in this District at the time this action is commenced.

**FACTUAL BACKGROUND**

18.     Hugo Parker alleges on information and belief that since 1957, Tate Andale has manufactured strainers, manifolds and valves for

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

commercial customers and the United States Navy, and at times incorporated asbestos-containing gaskets and packing as component parts, and has been a defendant in asbestos litigation around the country for the past several decades.

19.    In October 2014, under its authority as primary insurer for Tate Andale, Hartford asked Hugo Parker to serve as legal counsel for Tate Andale and to be responsible for handling all asbestos litigation anywhere in the United States in which Tate Andale found itself a defendant.

20.    Three months later, on January 9, 2015, Tate Andale was named as a defendant in *Schane*, wherein the plaintiffs alleged that William Schane's asbestos-related illness was caused in part by exposure to Tate Andale's asbestos-containing parts.

21.    The Schanes were represented by Galiher, DeRobertis & Waxman ("Galiher firm").

22.    At all relevant times, all asbestos matters in the Court of the First Circuit, State of Hawai`i were assigned to one judge for all purposes, Rhonda A. Nishimura ("Judge Nishimura").

23.    Prior to and during the *Schane* case, Hugo Parker undertook an investigation that included a review of drawings and documents made available and/or produced by Tate Andale in previous asbestos litigation to learn what drawings and documents Tate Andale possessed and what had been made available for inspection and/or produced by Tate Andale and its prior attorneys in asbestos litigation.

24.    During Hugo Parker's investigation, William Tate informed Hugo Parker that Tate Andale's relevant, non-privileged documents and drawings had been made available to the Galiher firm for inspection and/or copying on at least two prior occasions.

25.    At no time prior to April 2016 did anyone from Tate Andale,

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

1   including William Tate, inform Hugo Parker that legacy "Referenced"

2   drawings of Tate Andale's equipment, including duplex strainers, were

3   maintained on Tate Andale's computers.

4       26.     During the *Schane* litigation, the misrepresentations and

5   concealment of Mr. Tate and Tate Andale came unraveled through two sets

6   of pre-trial sets of motions: a Motion to Compel and a Motion for an Order

7   to Show Cause.

8              <u>The Motion to Compel Against Tate Andale</u>

9       27.     On March 30, 2016, over Hugo Parker's objection, the court

10  granted a Motion to Compel filed by the Schanes and ordered Tate Andale

11  to produce additional witnesses for deposition and to allow for additional

12  inspection of Tate Andale's documents.

13      28.     On April 4, 2016, in preparing Tate Andale to comply with the

14  Court's order, an attorney with Hugo Parker learned for the first time that

15  Tate Andale maintained electronic legacy "Referenced" drawings not

16  previously produced or made available for inspection to Hugo Parker or,

17  apparently, anyone else. Hugo Parker promptly produced the drawings to

18  the Galiher firm.

19      29.     William Tate and other employees of Tate Andale subsequently

20  affirmed under oath that Hugo Parker had no knowledge of the existence of

21  the electronic legacy "Referenced" drawings before April 4, 2016.

22      30.     Despite Hugo Parker's efforts to ensure that all of Tate Andale's

23  relevant drawings and documents were made available for inspection and

24  copying by the Galiher firm following the April 4, 2016 discovery of the

25  electronic legacy drawings, including repeated inquiries to Tate Andale to

26  confirm the existence and location of its documents, Hugo Parker learned

27  thereafter of Tate Andale's failure to disclose the existence of other

28  documents.

31.    Hugo Parker promptly informed the Galiher firm of the additional drawings and documents and made Tate Andale's drawings and documents available again for inspection.

<u>The Pre-Trial Order to Show Cause</u>

32.    In addition to their Motion to Compel, the Schanes filed a Motion for an Order to Show Cause arguing that William Tate and Tate Andale had (a) made fraudulent revisions to certain drawings to hide past use of asbestos; (b) withheld prior versions of drawings to conceal past use of asbestos; and (c) allowed original versions and prior revisions of drawings to be destroyed.  The Schanes also argued that Hugo Parker, as counsel for Tate Andale, had ratified Tate Andale's revision, concealment and destruction and had taken no remedial measures to rectify Tate Andale's years of fraud.

33.    Hearings on these issues were held over several days before trial was to begin. Hartford had a representative present during the Order to Show Cause hearings, including on May 2, 2016, when Mr. Hugo confirmed on the record that Tate Andale would pay the fees and costs associated with its production of documents resulting from the Schane's Motion to Compel.

34.    On May 3, 2016, the Court entered an order finding that "Tate Andale and/or Hugo Parker" had improperly withheld drawings and documents, resulting in issue sanctions against Tate Andale which effectively prevented it from denying any of the Schanes' allegations and limiting the trial solely to damages.

35.    Hugo Parker is informed and believes that following the Court's May 3, 2016 Order, Hartford informed William Tate and Tate Andale that Tate Andale's failure to disclose to Hugo Parker the existence of electronically stored documents and to produce such documents, despite requests to Tate Andale from Hugo Parker in *Schane*, may expose Tate

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

Andale to liability for any subsequent sanctions imposed by the Court.

36. A jury trial in *Schane* commenced on May 6, 2016.

37. Between May 16, 2016 and May 19, 2016, the Galiher firm and Mr. Hugo, as authorized and ratified by Tate Andale and Hartford, exchanged written letters settling *Schane*, the monetary terms of which are confidential but which included dismissal of the Order to Show Cause against Tate Andale and William Tate, but not against Hugo Parker.

38. Tate Andale and Hartford agreed to reimburse the Schanes for all the fees and costs associated with their discovery efforts, pre-trial and post-trial.

### The Court's Order to Show Cause Against Hartford

39. On May 2, 2016, the Court issued a *sua sponte* Order to Show Cause against Hartford because its representative allegedly did not have full settlement authority at the various settlement conferences.

40. Hugo Parker is informed and believes that thereafter Hartford and its counsel engaged in ex parte communications with the Court, that the Court and Hartford resolved the Order to Show Cause in secret, the terms of which remain under seal, and that Hartford paid a fine to the State of Hawai`i General Fund, the amount of which is also under seal.

### The Post-Trial Order to Show Cause Against Hugo Parker

41. On December 19, 2016, the Court issued its "Findings of Fact, Conclusions of Law and Order Granting Plaintiffs' Order to Show Cause" (the "FOF") in *Schane*.

42. According to the FOF, prior to Hugo Parker's representation, William Tate signed false discovery verifications, gave false and misleading deposition testimony regarding both Tate Andale's historic use of asbestos-containing components and the non-existence of Tate Andale's historic documents, and that William Tate and Tate Andale's misleading assertions

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

1    amounted to egregious discovery misconduct.

2        43.    The FOF further found that Hugo Parker failed to uncover the

3    fraud of William Tate and Tate Andale – both of whom had been excused

4    from the OSC through the in-trial settlement with the Schanes – and ordered

5    Hugo Parker to pay all costs, expenses and fees incurred by the Schanes for

6    their discovery efforts; ordered the Schanes to provide evidence of their fees

7    and costs; and ordered the parties to disclose if there were any prior

8    arrangements for reimbursement of such fees and costs.

9        44.    The same attorney that had represented Hartford in the *sua*

10   *sponte* Order to Show Cause against the Hartford was retained by Hartford

11   to represent Tate Andale for the purpose of submitting a letter to the Court

12   confirming that Hartford had agreed to pay the Schanes' discovery-related

13   fees and costs.

14       45.    Hartford told Hugo Parker the opposite.  After Hugo Parker

15   notified Tate Andale and Hartford that the Schanes would be complying

16   with the FOF and submitting evidence of their fees and costs, and that Hugo

17   Parker expected Tate Andale and Hartford to honor their express

18   agreement, Tate Andale and Hartford refused, and in January 2017 abruptly

19   gave notice of the termination of Hugo Parker's services to Tate Andale.

20       46.    On February 1, 2017, the Schanes submitted an Application for

21   Attorney's Fees and Costs seeking a total of over $1.6M.

22       47.    On May 1, 2017, Judge Nishimura issued a Minute Order

23   awarding $1,123,210.54 in fees and costs to the Schanes, which was reduced

24   to a final Judgment filed May 19, 2017 (the "May Judgment").

25       48.    Tate Andale and Hartford have continued to refuse to pay all or

26   any portion of the Schanes' fees and costs or to assist in challenging the

27   propriety of the fees and costs claimed.

28

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

# FIRST CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

(Against Defendants William Tate and Tate Andale)

49.    Hugo Parker re-alleges and incorporates herein each allegation contained in paragraphs 1 through 48, above.

50.    At all times, William Tate and Tate Andale owed a duty of candor and cooperation to Hugo Parker and a duty to abstain from injuring the person, property, or rights of Hugo Parker.

51.    William Tate and Tate Andale knew or should have known of (a) the existence of Tate Andale's electronic legacy drawings, (b) that the electronic legacy drawings had not been made available for inspection and/or produced in asbestos litigation, (c) that the electronic legacy drawings had been required to be produced, and (d) that Hugo Parker (and presumably predecessor defense counsel) had relied on William Tate and Tate Andale for their knowledge of the existence, or not, of such documents.

52.    Hugo Parker alleges on information and belief that William Tate and/or Tate Andale intentionally allowed Hugo Parker to remain unaware of the existence of the electronic legacy drawings and that William Tate and/or Tate Andale knew, or should have known, that Hugo Parker was ignorant of the true facts.

53.    As a direct and proximate result of William Tate and Tate Andale's conduct, Hugo Parker has been financially damaged, in an amount to be proven at trial, and has suffered non-monetary damages, including but not limited to damage to reputation in the legal community, in an amount to be proven at trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SECOND CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION – CIVIL CODE §§ 1709, 1710

(Against Defendants William Tate and Tate Andale)

54.     Hugo Parker re-alleges and incorporates herein by this reference each allegation contained in paragraphs 1 through 48 above.

56.     Hugo Parker alleges on information and belief that William Tate and Tate Andale made representations to Hugo Parker concerning the electronic legacy drawings that were false at the time they were made.

56.     Hugo Parker alleges on information and belief that William Tate and Tate Andale had no reasonable grounds for believing such representations were true when made.

57.     Hugo Parker alleges on information and belief that William Tate and Tate Andale intended that Hugo Parker rely on the misrepresentations, and Hugo Parker did reasonably rely upon their clients' misrepresentations, which was a substantial factor in causing them harm.

58.     As a result of the negligent misrepresentations alleged herein, Hugo Parker has been financially damaged, in an amount to be proven at trial, and have suffered non-monetary damages, including but not limited to damage to reputation in the legal community, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### FRAUD BY CONCEALMENT

(Against Defendants William Tate and Tate Andale)

59.     Hugo Parker re-alleges and incorporates herein by this reference each allegation contained in paragraphs 1 through 48 above.

60.     Hugo Parker alleges on information and belief that defendants William Tate and Tate Andale concealed the existence of relevant electronic legacy drawings in their exclusive custody, control and possession, which

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

William Tate and Tate Andale knew, or should have known, were not disclosed to Hugo Parker.

61.    Hugo Parker alleges on information and belief that defendants William Tate and Tate Andale knew, or should have known, that these material facts were concealed from Hugo Parker and that William Tate and Tate Andale knew, or should have known, that such concealment would, and did, induce Hugo Parker into certain actions in the handling of Tate Andale's defense in asbestos litigation, including in *Schane*.

62.    Hugo Parker alleges on information and belief that a reasonably prudent person in similar circumstances would have attached importance to the facts concealed, and Hugo Parker did, in fact, attach importance to those facts in its conduct of the defense of Tate Andale.

63.    Had Hugo Parker known the true facts, Hugo Parker would not have taken certain actions it did and would have taken other actions in the handling of Tate Andale's defense, including in *Schane*.

69.    As a result of the concealment of true facts alleged herein, Hugo Parker has been financially damaged, in an amount to be proven at trial, and has suffered non-monetary damages, including but not limited to damage to reputation in the legal community, in an amount to be proven at trial.

## **FOURTH CAUSE OF ACTION**

### **TORTIOUS INTERFERENCE WITH CONTRACT**

(Against Defendants William Tate and Tate Andale)

70.    Hugo Parker re-alleges and incorporates herein by this reference each allegation contained in paragraphs 1 through 48 above.

71.    Hartford and Hugo Parker had an agreement by which Hugo Parker was retained by Hartford to defend Tate Andale in national asbestos litigation and Hartford and Tate Andale would compensate Hugo Parker

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

for its services.

72.    Tate Andale knew, or should have known, of the Hartford's foregoing agreement with Hugo Parker.

73.    Hugo Parker alleges on information and belief that William Tate and/or Tate Andale knew, or should have known, that its intentional conduct alleged herein would lead to the termination of Hugo Parker's agreement to defend Tate Andale, which in fact occurred.

74.    As a result of the intentional conduct of William Tate and/or Tate Andale alleged herein, Hugo Parker has been financially damaged, in an amount to be proven at trial, and has suffered non-monetary damages, including but not limited to damage to reputation in the legal community, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### IMPLIED INDEMNITY

(Against All Defendants)

75.    Hugo Parker re-alleges and incorporates herein by this reference each allegation contained in paragraphs 1 through 48 above.

76.    The FOF and the May Judgment held Hugo Parker liable for damages directly arising from the conduct of Defendants, and each of them, including but not limited to, their failure to pay the contractually agreed-to fees and costs associated with all discovery in *Schane*.

77.    Hugo Parker's liability in *Schane* is vicarious, and the direct and proximate result of the active and affirmative conduct on the part of Defendants, and each of them.

78.    As a result of the Defendants' conduct alleged herein, Hugo Parker has been financially damaged, in an amount to be proven at trial, and has suffered non-monetary damages, including but not limited to damage to reputation in the legal community, in an amount to be proven at

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

trial.

**SIXTH CAUSE OF ACTION**

**EQUITABLE INDEMNITY**

(Against All Defendants)

79.     Hugo Parker re-alleges and incorporates and incorporate herein by this reference each allegation contained in paragraphs 1 through 48 above.

80.     Hugo Parker alleges that Defendants were the primary cause of the events leading up to and giving rise to the FOF and the May Judgment. Their conduct, including but not limited to their refusal to pay to the contractually agreed-to fees and costs associated with any and all discovery in *Schane*, caused the monetary sanctions assessed against Hugo Parker and were the proximate cause of the damages imposed against Hugo Parker.

81.     By reason of the foregoing, Defendants are responsible for all such damages in direct proportion to the extent of their culpability in bringing about such damages. Hugo Parker is entitled to judgment over and against Defendants, and each of them, in an amount proportionate to Defendants' financial responsibility for such damages that exceed their responsibility, if any.

**SEVENTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

(Against Hartford)

82.     Hugo Parker re-alleges and incorporates herein by this reference each allegation contained in paragraphs 1 through 48 above.

83.     Hugo Parker has duly performed or satisfied all conditions, promises and obligations required to be performed by it in accordance with the terms and conditions of its retention by Hartford as counsel for Tate Andale.

-15-

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

84.    Despite repeated requests to do so, Hartford has failed to remit payment to Hugo Parker for legal services it has performed and the costs it has advanced, thereby breaching the parties' agreements.

85.    As a direct and proximate result of Hartford's breach of the parties' agreements, Hugo Parker has suffered financial damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### ACCOUNT STATED

### (Against Hartford)

86.    Hugo Parker re-alleges and incorporates herein by this reference each allegation contained in paragraphs 1 through 48 above.

87.    During its representation of Tate Andale, Hugo Parker submitted regular billing statements to Hartford detailing the legal fees for services rendered and cost incurred by Hugo Parker.

88.    Hugo Parker has requested Hartford pay these sums. However, Hartford has refused, and continues to refuse, to pay Hugo Parker for these services rendered and costs incurred.

89.    As a direct and proximate result of Hartford's breach of the parties' agreements, Hugo Parker has suffered damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

### FOR SERVICES RENDERED

### (Against Hartford)

90.    Hugo Parker re-alleges and incorporates herein by this reference each allegation contained in paragraphs 1 through 48 above.

91.    Hugo Parker has performed legal services and incurred costs for Tate Andale at Hartford's request.

92.    Hartford promised to pay Hugo Parker for the legal services to

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

be performed and costs to be incurred at Harford's request.

93.    Hugo Parker has requested Hartford pay these sums. However, Hartford has refused, and continues to refuse, to pay Hugo Parker for these services rendered and costs incurred.

94.    As a direct and proximate result of Hartford's breach of the parties' agreements, Hugo Parker has suffered damages in an amount to be proven at trial.

## TENTH CAUSE OF ACTION

### QUANTUM MERUIT

(Against Hartford)

95.    Plaintiffs re-allege and incorporate herein by this reference each allegation contained in paragraphs 1 through 48 above.

96.    Hugo Parker has performed legal services and incurred costs at Hartford's request.

97.    Hartford promised to pay Hugo Parker for such legal services to be performed and costs to be incurred.

98.    Hugo Parker has requested Hartford pay these sums. However, Hartford has refused, and continues to refuse, to pay Hugo Parker for these services rendered and costs incurred.

99.    As a direct and proximate result of Hartford's breach of the parties' agreements, Hugo Parker has suffered damages in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

100.    Plaintiffs demand a trial by jury of all matters alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, and each of them, as follows:

1.    For monetary damages in an amount not less than $515,000.00

for attorneys' fees and costs rendered in the defense of Tate Andale and unpaid to date;

2.      For monetary damages in the principal amount of $1,123,210.54 representing the fees and costs incurred by the Schanes and/or the Galiher firm in *Schane*, and for all interest accruing thereon at the rate of 10% per annum;

3.      For monetary damages in the amount of the fees and costs incurred to obtain a supersedeas bond to stay enforcement of the May Judgment;

4.      For monetary damages, according to proof, resulting from Plaintiffs' costs of suit, including but not limited to reasonable attorneys' fees, expert fees and costs, related to defending against the Order to Show Cause in *Schane*, including but not limited to any appeal from the FOF and the May Judgment.

5.      For compensatory damages, according to proof, caused by Defendants' actions, including but not limited to compensatory damages for damage to Plaintiffs' reputation in the legal community to be proven at trial;

6.      For punitive damages, according to proof, caused by Defendants' intentional and wanton conduct to be proven at trial;

7.      For prejudgment interest at the maximum rate allowable by law;

8.      For costs of suit incurred herein, including reasonable attorneys' and expert fees;

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

9.    For such other and further relief as the Court may deem just and proper.

Dated: May 25, 2017                  HUGO PARKER, LLP

By: /s/ Edward R. Hugo
    Edward R. Hugo
    James C. Parker
    Tina M. Glezakos
    Charles S. Park
    Attorneys for Defendants
    HUGO PARKER, LLP and EDWARD R. HUGO, ESQ.

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED